# Exhibit 3

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

BOCA RATON COMMUNITY HOSPITAL, )
INC., a Florida not-for-profit corporation d/b/a )
BOCA RATON COMMUNITY HOSPITAL, )
on behalf of itself, and on behalf of a Class of )
all others similarly situated, )
                                            )
        Plaintiff, )
                                        )
v.                              ) Case No. 05-80183-CIV-SEITZ/MCALILEY
                                        )
TENET HEALTHCARE CORPORATION )
                                        )
        Defendant. )
_____)

*AMICUS CURIAE* MEMORANDUM OF THE UNITED STATES OF AMERICA
IN RESPONSE TO TENET HEALTHCARE CORPORATION'S
CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT

classic red herring.[6]

Also a red herring is Tenet's argument that the Outlier Statute and Regulations permit unlimited turbocharging because they do not specifically define how closely charges must be related to costs. Under the Outlier Statute and Regulations, charges must be set so that they reasonably reflect costs when multiplied by the cost-to-charge ratio. Tenet's Motion, however, is based on the proposition that Tenet is free to claim outlier payments based on whatever charges it wishes, regardless of how attenuated the relationship is between those charges and Tenet's costs. Because this proposition is plainly incorrect, the Court should deny Tenet's Motion. Moreover, because evidence regarding the magnitude of Tenet's charges and costs is not before the Court, the question of precisely how closely Tenet's charges must reflect Tenet's costs in order to be reasonable is premature.

### IV. TENET'S READING OF THE OUTLIER STATUTE AND REGULATIONS IS NOT JUSTIFIED BY CMS' 2003 AMENDMENTS TO THE OUTLIER REGULATIONS

Tenet argues that CMS' amendment of the Outlier Regulations in 2003 constituted an admission that Tenet's turbocharging scheme was legal prior to the amendments. According to Tenet, when CMS revisited the Outlier Regulations in 2003, CMS' comments acknowledged "that neither the old rule nor the new rule restricted a hospital's right to set its own charges or to submit outlier claims for cases that meet the prescribed formula [*i.e.*, that qualified for outliers under the then-existing formula that CMS employed to pay for outliers]." Tenet's Op. Br. at 27.

In fact, however, Tenet misrepresents CMS' statements. CMS has never taken a position

---

[6] CMS's UB-92 claim forms permit hospitals that wish to set their charges unusually high, even when they do not incur unusually high costs, to opt out of outlier payments simply by inserting Code 66 on its Medicare billing forms. Medicare Hospital Manual, Transmittal No. 452 (July 1985).

14

that the turbocharging schemes that occurred prior to the 2003 amendments were legal. As the former CMS Administrator, Thomas Scully,[7] stated publicly in 2003, the United States Department of Justice and the United States Department of Health and Human Service's Office of Inspector General were at that time conducting investigations regarding the legality of pre-2003 outlier claims. Plaintiff's Reply in Support of its Motion at 23 (quoting Exh. T). CMS' statements and conduct in connection with the 2003 amendments were designed solely to ensure that excessive outlier claims *going forward* would be minimized.

As was discussed in the United States' previous *amicus* brief, the prospective nature of the 2003 amendments is consistent with CMS' stated belief that "there is a serious question" as to whether it had authority to engage in retroactive rulemaking. *See* 68 Fed. Reg. 34494, 34510 (June 9, 2003). Thus, the only thing that can be concluded from the 2003 amendments at issue in this case is that CMS opted not to make any change retroactive for fear of exceeding its rulemaking authority.

V. TENET'S STATEMENT THAT CMS HAS NEVER REQUESTED TENET TO RETURN EXCESSIVE OUTLIER PAYMENTS IS MISLEADING

In its Reply Brief, Tenet states, in bold, that "CMS has never requested that Tenet return the outlier payments that Boca claims were ill-gotten." Tenet's Reply Br. at 6. In fact, however, as stated in its earlier *amicus* brief, the United States is currently investigating whether Tenet violated the federal False Claims Act, 31 U.S.C. §§ 3729-3733, by knowingly claiming massive

---

[7] In light of Tenet's withdrawal of Mr. Scully's declaration in support of the Motion and the Court's Order of January 25, 2006 stating that the Court shall not consider that declaration in connection with the Motion, the United States simply notes that: the opinion of Mr. Scully, who is currently employed by a law firm that represents Tenet in connection with other matters involving the United States, does not reflect the views of CMS; and Tenet was not accurate in suggesting that the United States' request to withdraw the declaration was strictly procedural in nature.

15

the opportunity to be heard should the Court grant that request.

DATED: February 2, 2006

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

R. ALEXANDER ACOSTA
United States Attorney

By: *Daniel A Spiro* by *amm*
MICHAEL F. HERTZ
MICHAEL GRANSTON (Bar No. A5500918)
DANIEL SPIRO (Bar No. A5500919)
DIANA YOUNTS
DAVID T. COHEN
U.S. Department of Justice
P.O. Box 261
Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 616-3898
Facsimile: (202) 514-0280
E-mail: daniel.spiro@usdoj.gov

WENDY A. JACOBUS (Bar No. A500028)
Chief, Civil Division
MARK A. LAVINE (Bar No. 648876)
Assistant United States Attorney
99 N.E. 4th St.
Miami, Florida 33132
Telephone: (305) 961-9303
Facsimile: (305) 530-7139
E-mail: mark.lavine@usdoj.gov

Attorneys for *Amicus Curiae*
United States of America

17