# Exhibit 4



U.S. Department of Justice

Civil Division

---

Washington, D.C. 20530

JAN 1 1 2006

Jay P. Lefkowitz, Esq.
Kirkland & Ellis
655 Fifteenth Street, N.W.
Washington, DC 20005

    Re:   Boca Raton Community Hospital, et al., v. Tenet
           Healthcare Corp., Case No. 05-80183-CIV (S.D. Fla.)

Dear Mr. Lefkowitz:

    It has come to my attention that you recently filed the declaration of Thomas A. Scully in the above-captioned case, in which Mr. Scully discussed his views regarding Tenet's practices regarding Medicare outliers, and also his personal involvement in CMS' handling of those practices. For the reasons expressed below, it appears that the submission of this declaration may well have been improper. Therefore, I request that the declaration be withdrawn.

    First, the declaration appears to implicate 18 U.S.C. § 207(a)(1), which prohibits former Government employees from "mak[ing], with intent to influence, any communication to or appearance before any . . . court . . . of the United States . . . on behalf of any other person (except the United States or the District of Columbia) in connection with a particular matter (A) in which the United States . . . has a direct and substantial interest, (B) in which the person participated personally and substantially [while a Government employee], and (C) which involved a specific party or specific parties at the time of such participation."

    Mr. Scully's declaration is clearly a communication intended to influence the federal court on Tenet's behalf in the above-captioned case. Although the United States is not a party to the case, it clearly has a direct and substantial interest in it, for the reasons set forth on the first page of the United States' May 16, 2005 amicus brief in the case. As you and Mr. Scully are well aware, the Government has been actively investigating Tenet's turbocharging practices for several years. The declaration is directly inconsistent with, and appears intended to undermine, the Government's position on this matter.

    Mr. Scully's involvement in this matter implicates § 207 because he participated personally and substantially in the Government's consideration of the lawfulness and appropriateness of Tenet's outlier practices while he was in the Government. When the issue first arose, Mr. Scully made public statements about it in his capacity as a public official, and even testified before Congress about it. See Scully Declaration, ¶ 4; Exhibit 3 to Tenet's

-2-

December 23, 2005 motion. I understand that Mr. Scully had at least one meeting with high-level Tenet representatives about this issue. In ¶ 9 of his declaration, he states that he personally asked Tenet to voluntarily refrain from claiming hundreds of millions of dollars in outlier claims, and that Tenet complied with his request. His declaration also states that once he learned of Tenet's "abuses" in his official capacity, he "called Tenet's CEO . . . to demand that it stop." Declaration, ¶ 4.

It is true that § 207 permits Mr. Scully to act as a fact witness on these matters, but his declaration goes well beyond factual testimony to include statements that Tenet's conduct was "clearly legal," "relatively meritorious," etc. Consequently, Tenet proffered his declaration not as fact testimony, but as expert testimony, specifically the interpretation by "the person 'responsible for all aspects of the Medicare program . . .' of what conduct was lawful under the Medicare statute and outlier regulations." Tenet's December 23, 2005 Memorandum, p. 12. Such expert testimony is clearly prohibited under 18 U.S.C. § 207(j)(6)(A).

Second, the declaration appears to have been submitted to the court in violation of the Touhy regulations for the Department of Health and Human Services, which prohibit current and former HHS employee from "provid[ing] testimony. . . concerning information acquired in the course of performing official duties. . . unless authorized by the Agency head. . . ." 45 C.F.R. § 2.3. As I understand it, neither Mr. Scully nor Tenet ever requested or received approval from the Department of Health and Human Services for his declaration.

Third, Mr. Scully's participation in this matter may violate applicable bar rules. For example, D.C. Rule of Professional Conduct 1.11(a) states, "a lawyer shall not accept other employment in connection with a matter which is the same as, or substantially related to, a matter in which the lawyer participated personally and substantially as a public officer or employee." I do not know if Mr. Scully or his firm were paid specifically for providing this declaration, but I do know that his firm is currently representing Tenet on several matters pending in my office. In order to be able to analyze this issue fully, I would like to be advised of what financial arrangements, if any, Mr. Scully and/or his firm have made with Tenet in connection with his participation in the Boca Raton case.[1]

Given the briefing schedule in the Boca Raton case, I would request that either the declaration be withdrawn or that a written explanation of why it was not improper be provided to me promptly.

Thank you in advance for your cooperation.

---

[1] Another D.C. Bar Rule of Professional Conduct that may be relevant here is Rule 1.6, which protects confidences and secrets that Mr. Scully learned in his capacity as a Government employee. Also, it is not clear to me how Tenet can present his declaration to the court without disclosing the fact that his firm is currently receiving substantial legal fees from Tenet in connection with other matters.

-3-

Given the briefing schedule in the Boca Raton case, I would request that either the declaration be withdrawn or that a written explanation of why it was not improper be provided to me promptly.

Thank you in advance for your cooperation.

Sincerely,

Michael F. Hertz
Director
Commercial Litigation Branch

cc: Thomas A. Scully