UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| In the Matter of a Subpoena Issued to Thomas A. Scully: | Misc. No. 06-MC-0007-GK |
| BOCA RATON COMMUNITY HOSPITAL, INC., a Florida not-for-profit corporation d/b/a BOCA RATON COMMUNITY HOSPITAL, on behalf of itself, and on behalf of a Class of all others similarly situated,<br><br>Plaintiff,<br>v.<br><br>TENET HEALTHCARE CORPORATION<br><br>Defendant. | United States District Court<br>Civil No. 05-80183<br>Southern District of Florida<br>Hon. Patricia A. Seitz<br>(related case) |

**TENET HEALTHCARE CORPORATION'S CONSOLIDATED OPPOSITION TO THE UNITED STATES' CROSS-MOTION TO QUASH AND REPLY IN SUPPORT OF MOTION TO COMPEL DEPOSITION OF THOMAS A. SCULLY**

Jay P. Lefkowitz (DC 449280)*
Karen N. Walker (DC 412137)
Susan E. Engel (DC 484448)
John C. O'Quinn (DC 485936)
KIRKLAND & ELLIS LLP
655 15th Street NW, Suite 1200
Washington, DC 20005
(202) 879-5000
*Counsel for Tenet Healthcare Corp.*

March 17, 2006   * *Counsel of Record*

RECEIVED
MAR 17 2006
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

## TABLE OF CONTENTS

      **Page**

INTRODUCTION ..................................................................................................................1

ARGUMENT .........................................................................................................................2

I.      The Exhaustion Argument Is A Red Herring. ...........................................................2

II.     HHS's *Touhy* Regulations Are Invalid As Applied To Former Employees. ............6

        A.      The Housekeeping Statute Does Not Authorize The Substantive Control Over Information Urged By The Government, Rather It Merely Allows An Agency To Control The Use Of Its Own Resources...........................................7

        B.      The Potential Assertion Of Privilege By The Government Cannot Justify Application Of HHS's *Touhy* Regulations To Former Employees. .....................12

CONCLUSION....................................................................................................................14

## INTRODUCTION

In its Motion to Quash, the government makes a breathtakingly broad assertion of executive power. The government claims the power to pre-clear, circumscribe, and in many cases outright veto, the testimony of *former* employees of the Department of Health and Human Services ("HHS") in response to a subpoeana issued by a United States District Court (subject only to highly deferential review under the Administrative Procedure Act ("APA")). Mr. Scully—the recipient of this Court's subpoena—likewise claims exemption from this Court's jurisdiction unless and until HHS approves his testimony. However, nothing in the Federal Housekeeping Statute, 5 U.S.C. § 301, authorizes the executive branch to circumscribe the power of a federal court to issue a subpoena to a non-employee, or otherwise control the flow information from non-employees. However much the government might like to assume the role of "Big Brother" with respect to former employees, the *Touhy* regulations—promulgated without notice and comment—cannot validly restrict substantive rights. Rather, they can only be used as a tool for agencies to manage their own resources and may only legitimately govern ***wholly internal, housekeeping*** issues.

Unsurprisingly, both the government and Mr. Scully seek to avoid the merits of Tenet Healthcare Corporation's ("Tenet's") motion, and assert procedural obstacles that need not detain this Court for very long. They argue that Tenet has failed to exhaust administrative remedies by not first pursuing the very pre-clearance that Tenet contends is unlawful. However, Tenet is not seeking APA review of any agency decision. Indeed, Tenet has no quarrel with the United States as such.[1] Tenet's complaint is solely with ***Mr. Scully's refusal to comply with this***

---

[1] Although the United States styles its brief as a "Memorandum in Opposition to Tenet's Motion to Compel and in Support of United States' Cross-Motion to Quash Subpoena of Thomas A.
(Continued...)

***Court's subpoena***, which he insists is based on HHS's *Touhy* regulations. Thus, the exhaustion arguments marshaled by both the government and Mr. Scully are beside the point. In any event, under well-settled principles of administrative law, exhaustion is unnecessary here because it would be utterly futile. The question presented is a wholly legal one in which the government's position is entrenched and no further record development is necessary. Thus, there is no obstacle to this Court compelling Mr. Scully to respond to Tenet's subpoena.

## ARGUMENT

### I.     The Exhaustion Argument Is A Red Herring.

The government and Mr. Scully both assert that Tenet was required to "exhaust ... administrative remedies" before filing the instant motion with this Court. Both misapprehend the nature of Tenet's motion, the issues presented, and fundamental principles of administrative law. To be clear, Tenet ***is not challenging HHS's refusal to honor a subpoena or a decision to refuse to allow testimony***. Rather, Tenet objects to ***Mr. Scully's reliance*** on HHS's *Touhy* regulations as a basis for refusing to comply with the subpoena because the regulations are invalid as applied to former employees. This case is, thus, fundamentally different from the cases cited by the government and Mr. Scully in support of their exhaustion argument. In each of those cases, an agency had affirmatively refused to allow an employee to testify. *See, e.g.*, *In re Boeh*, 25 F.3d 761, 763 (9th Cir. 1994) ("The proper official in the Department denied permission for Boeh to testify, and directed Boeh to decline respectfully to obey the subpoena."); *Truex v. Allstate Ins. Co.*, No. 05-0439, 2006 WL 241228, *1-*2 (D.D.C. Jan. 26, 2006)

---

Scully," the government does not represent Mr. Scully and technically has no standing to "oppose" Tenet's Motion to Compel, which is addressed solely to Mr. Scully. (Tenet provided a copy of its motion to the Department of Justice as a courtesy.)

(involving a motion to compel FEMA itself to comply with a subpoena); *Ho v. United States*, 374 F. Supp. 2d 82, 83 (D.D.C. 2005) (noting DHS had denied plaintiff's request for testimony of an employee); *Lerner v. District of Columbia*, No. Civ.A.00-1590, 2005 WL 237515, *1 (D.D.C. Jan. 7, 2005) (noting DOJ had denied plaintiff's request for testimony of two employees). Rather than seek review of that decision, the litigant moved to compel. Indeed, even in the *dicta* cited by the government and Mr. Scully, the D.C. Circuit acknowledged that application of the APA was limited to "review [of] the **agency's decision** not to permit its employee to testify." *Houston Bus. Journal, Inc. v. Office of the Comptroller of the Currency*, 86 F.3d 1208, 1212 n.4 (D.C. Cir. 1996) (emphasis added). Here, Tenet is not challenging an agency decision (there is no agency decision—there is simply Mr. Scully's representation that he will not respond). Unlike *In re S.E.C. ex rel. Glotzer*, 374 F.3d 184, 190-91 (2d Cir. 2004), Tenet is not seeking to compel **the agency** to do anything. Rather, Tenet's fundamental objection is that **the regulations themselves are invalid** to the extent they purport to allow former employees to refuse to comply with a federal court subpoena unless the litigant first pre-clears the subpoena with HHS. Simply put, there is no agency action here, and thus nothing for Tenet to exhaust.

Moreover, this "exhaustion" argument fundamentally misconstrues Tenet's objection to application of the *Touhy* regulations in this case. Tenet objects to application of HHS's pre-clearance process to former employees because it is *ultra vires*—there is no authorization for such pre-clearance with respect to former employees in the Federal Housekeeping Statute, 5 U.S.C. § 301.[2] Nothing about *that* wholly legal objection would be resolved if Tenet was

---

[2] HHS is, of course, not charged with administering the Housekeeping Statute and, thus, its views regarding that statute are not entitled to deference under *Chevron U.S.A., Inc. v. Natural Res.*
(Continued...)

3

required to first pursue administrative remedies. The government's reliance on the general platitude that "the process of exhausting administrative remedies creates a more complete record of the district court to evaluate," and its reliance on *DRG Funding Corp. v. Secretary of Housing & Urban Development*, 76 F.3d 1212, 1214 (D.C. Cir. 1996), thus misses the mark. Mot. Quash. 7. There are no facts to be developed here. Whether or not HHS would ultimately allow Tenet to depose Mr. Scully—and the "record" the agency might develop on that issue—is entirely beside the point. That record would shed no light on the purely legal issue presented here—whether HHS's *Touhy* regulations are invalid as applied to former employees, and thus provide no basis for Mr. Scully refusing to comply with the subpoena.

In any event, the government's assertion that, "[u]nder the Administrative Procedure Act, litigants who wish to challenge an agency's *Touhy* regulations are required to submit a request for information to the agency, see if that request is denied, and then file an appeal," is simply wrong as a matter of law. Mot. Quash 6. It is hornbook law that Tenet is not required to engaged in such a futile exercise. As the D.C. Circuit has long held, "[t]he exhaustion requirement is not jurisdictional ... but rather should be applied 'flexibly, with an eye toward its underlying purposes.'" *Cutler v. Hayes*, 818 F.2d 879, 890 (D.C. Cir. 1987) (quoting *Etelson v. Office of Personnel Mgmt.*, 684 F.2d 918, 923 (D.C. Cir. 1982)). The exhaustion doctrine is merely intended to allow the agency to apply expertise (where applicable) and to assist with fact development—neither of which is applicable here. *See id.* at 890-91; *see also* note 1, *supra*.

---

*Def. Council, Inc.*, 467 U.S. 837 (1984). *See Ass'n of Civilian Technicians v. Fed. Labor Relations Auth.*, 269 F.3d 1119, 1121 (D.C. Cir. 2001) ("In general, this Court does not defer to the [agency's] interpretation of a statute not committed to the [agency's] administration, but reviews such purely legal questions *de novo*.").

4

Thus, even if it were relevant, the exhaustion requirement is properly "disregarded by the court when application of the doctrine would be futile." *Cutler*, 818 F.2d at 891.

Here, of course, the agency has made it quite clear that it is unwilling to consider the application of the *Touhy* regulations to former employees, instead mounting a vigorous (albeit ill-conceived) defense of the regulations. *See* Mot. Quash 8-13. Particularly given HHS's February 13, 2006 letter objecting to the deposition of Mr. Scully, *see* Mot. Compel Ex. 9, the government's suggestion that administrative review would allow HHS to consider "changing its policies," is utterly disingenuous, Mot. Quash at 7. Under precisely these circumstances, the D.C. Circuit has made it clear that pursuit of illusory administrative remedies is unnecessary:

> When an agency has committed itself not to change its rules unless judicially compelled to do so, has made known that its general views are contrary to those of the complainant, and has never given an inkling that it would consider a matter afresh, and when the regulations in question have received careful attention within and outside the agency, a complainant need not make a *pro forma* request that the agency redo its system.

*Etelson*, 684 F.2d at 925. Instead, "the court may promptly proceed to the merits of the action when it is confident or becomes confident that agency recourse is futile, as where the agency's position is firm." *Natural Res. Def. Council, Inc. v. Train*, 510 F.2d 692, 703 (D.C. Cir. 1975). Indeed, this case is on all fours with *American Federation of Government Employees v. Acree*, 475 F.2d 1289 (D.C. Cir. 1973) (*per curiam*). There, the D.C. Circuit held that failure to exhaust administrative remedies did not preclude judicial relief where exhaustion would have been an exercise in futility because the challenged agency procedures were specifically authorized by agency regulation. Where, as here, the regulations facially purport to require pre-clearance with respect to former employees, "it would be blinking reality to expect the [agency], in an adjudicatory proceeding," to do an about face and suddenly hold that such pre-clearance is not

5

required. *Id.* at 1292. The government's cry of administrative review for the sake of administrative review should thus be disregarded as an exercise in utter futility.

The futility of seeking administrative review is further highlighted by the fact that the United States is admittedly adverse to Tenet. As the government candidly concedes, it has "been conducting its own investigation into Tenet's ... practices, and ***has been considering filing its own lawsuit against Tenet***" raising the same issues presented in the underlying Florida case. Mot. Quash 4 (emphasis added). And while not technically a party to the Florida case, the United States has filed not one, but *two* separate amicus briefs against Tenet in that case. *See, e.g.*, Mot. Quash 5 n.3 & Mot. Quash Ex. 3. To require Tenet to exhaust an administrative process in which the request for testimony is only granted when it "would promote the objectives of the Department," 45 C.F.R. § 2.3, is obviously pointless.

## II.    HHS's *Touhy* Regulations Are Invalid As Applied To Former Employees.

Both the government and Mr. Scully contend that HHS's *Touhy* regulations are permissible as applied to former employees because of the "Government's interest in regulating the disclosure of ... information." Mot. Quash 8-9. The government then launches into a parade of horribles over what might happen if it "does not learn about efforts to obtain its privileged or protected information until after the information has been released," and asserts that "[t]he only way to prevent such situations is to require people seeking potentially protected information from ... former Government employees to give the Government advance notice." Mot. Quash 12. The problems with the these arguments are manifest. *First*, the government has no free-standing interest in regulating the disclosure of information by former employees. *Touhy* regulations cannot create a substantive privilege. Rather, these regulations were promulgated solely as an internal, housekeeping matter—without notice and comment. Thus, they cannot create a substantive obligation on Tenet. *Second*, if HHS's *Touhy* regulations only required

6

advance notice of depositions of former employees, that would present an entirely different case. However, the regulations at issue are not merely notice provisions to enable the government to assert evidentiary and constitutional privileges. Instead, they require *pre-clearance* of the testimony a litigant seeks to obtain from a former HHS employee, and effectively give the agency a veto over testimony that does not "promote the objectives of the Department," 45 C.F.R. § 2.3, subject only to review under a highly deferential standard. Yet, for all of the government's irrelevant bluster about privilege and confidentiality, the *Touhy* regulations are an utterly ineffective means of preserving privilege because they do nothing to prevent *disclosure* by former employees in other contexts—they only preclude former employees from responding to a subpoena issued by an Article III court, uniquely prejudicing litigants and the federal courts and thereby raising serious separation of powers concerns. At bottom, for all of their policy arguments, nothing in the *statute* supports the breathtakingly broad assertion of executive power articulated by the government and Mr. Scully, and the Court should reject it.

### A. The Housekeeping Statute Does Not Authorize The Substantive Control Over Information Urged By The Government, Rather It Merely Allows An Agency To Control The Use Of Its Own Resources.

The government contends that the Housekeeping Statute authorizes application of the *Touhy* regulations to former employees because of the "agency's interest in protecting non-public information." Mot. Quash 9. Not so. Likewise, Mr. Scully's contention that the "Government would have the same interest in *unwritten* official information whether it was in the possession of a former or current employee," presupposes that the Housekeeping Statute authorizes an agency to control information, rather than merely its own resources. Opp. 8 n.2. It does not. The statute merely allows an agency head to "prescribe regulations for the government

7

of his department, the conduct of its *employees*, ... and the custody, use, and preservation of its *records, papers, and property*." 5 U.S.C. § 301 (emphasis added).[3] None of these are implicated here. Mr. Scully is neither an employee nor is his testimony a "record[]," "paper[]," or otherwise "property" of HHS. The government misleadingly suggests that Tenet agreed that the statute could be read to authorize regulations "allow[ing] the agency to 'disseminate information in an orderly manner,'" and thereby control the flow of all agency information. Mot. Quash 10. Tenet, in fact, argued precisely the opposite. *See* Mot. Compel 1, 7. Far from granting HHS the kind of Orwellian control over "non-public information" claimed by the government here, the Housekeeping Statute serves a much more pedestrian function—namely, it allows the agency to manage *its own resources*. *See Boron Oil Co. v. Downie*, 873 F.2d 67, 70 (4th Cir. 1989); *Bobreski v. U.S. EPA*, 284 F. Supp. 2d 67, 78-79 (D.D.C. 2003).

This case is, thus, "simply one more attempt to twist this simple administrative statute into an authorization for the promulgation of substantive rules." *U.S. ex rel. O'Keefe v. McDonnell Douglas Corp.*, 132 F.3d 1252, 1255 (8th Cir. 1998). To be sure, the agency can enact regulations that provide for the agency's own orderly dissemination of information *from within the agency itself*—so that agency employees are not distracted from their public duties by responding to subpoenas on an *ad hoc* basis—but that does not give it authority to pre-clear, control, or otherwise limit the testimony of former employees. An agency must rely on a substantive privilege recognized by the courts or enacted by Congress to limit a former

---

[3] Mr. Scully's suggestion that the federal housekeeping statute does not draw a distinction between former employees and current employees strains credulity. Opp. 7. By its own terms it only grants an agency authority over the "conduct of *its employees*," not third parties who happen to have once been employees. 5 U.S.C. § 301 (emphasis added).

8

employee's testimony. *See Exxon Shipping Co. v. U.S. Dep't of Interior*, 34 F.3d 774, 780 (9th Cir. 1994).

Nothing in the D.C. Circuit's decision in *Houston* is to the contrary. In *Houston*, the court was not asked to consider application of *Touhy* regulations to *former* employees, the subpoenaing of whom would not implicate resource issues for an agency. By its own terms, *Houston*'s two-sentence discussion of the implication of validly-enacted *Touhy* regulations for a subpoena *ad testificandum* was limited to an agency "employee." 86 F.3d at 1212 n.4. Thus, despite Mr. Scully's assertion to the contrary, *see* Opp. 11-12, *Houston* does not conflict with the Sixth Circuit's decision in *In re Bankers Trust Co.*, 61 F.3d 465, 470 (6th Cir. 1995), which makes clear that *Touhy* regulations only allow an agency to manage its own internal resources and determine how the agency will respond to subpoenas issued to employees. Such regulations may not validly require a non-employee third party (such as Mr. Scully) to decline to disclose testimony. *Id.*[4]

Indeed, the agency's *Touhy* regulations confirm that they are merely designed to help the agency control the use of its own resources and do not create a substantive right for the agency to broadly control the flow of information about the agency from former employees. A party requesting testimony pursuant to *Touhy* regulations must demonstrate "why the information sought is unavailable by any other means." 45 C.F.R. § 2.4(a). That requirement makes sense when applied to current employees—it ensures that public servants are not being distracted from

---

[4] Mr. Scully's reliance on *Owens v. Republic of Sudan*, 374 F. Supp. 2d 1, 28-29 (D.D.C. 2005), is likewise unavailing for the simple reason that no one in *Owens* challenged application of the *Touhy* regulations at issue there to former employees. *See* Opp. 8. The same is true of *United States v. Blizzard*, 674 F.2d 1382, 1387 (11th Cir. 1982). Thus, there is nothing "[n]otabl[e]" about the court's failure to draw a distinction between former and current employees in either case. Opp. 8.

9

their duties to respond to requests when the requested information is available from other sources. It makes no sense with respect to former employees. Similarly, the regulations purport to only permit testimony when such testimony would "promote the objectives of the Department," 45 C.F.R. § 2.3, and thus, a request for testimony must explain "why the testimony sought would be in the interest of DHHS or the federal government," *id.* § 2.4(a).[5] Again, this requirement might make some sense as applied to current employees because it ensures that if taxpayer money is being used (in the form of a public servant's time) in private litigation, it is advancing the public interest. But, as applied to former employees, the requirement that the sought testimony must "promote the objectives of the Department" serves no resource-management purpose and operates as a substantive privilege—something there is no statutory authority to support. To the contrary, *Touhy* itself upheld the disputed regulation at issue there under the Housekeeping Statute only "as a matter of ***internal administration***." 340 U.S. at 471 (Frankfurter, J., concurring) (emphasis added). As the Supreme Court has subsequently held, the Housekeeping Statute simply does not authorize the promulgation of substantive rules. *Chrysler Corp. v. Brown*, 441 U.S. 281, 309-10 (1979).

Here, we know that HHS's *Touhy* regulations cannot operate to prohibit Tenet—obviously a non-governmental entity—from seeking testimony from former employees precisely because the regulations were promulgated ***without any opportunity for public comment***, in reliance on the APA's exception for agency management and personnel rules. *See* Final Rule, 68

---

[5] At least as applied to former employees, this classic prior restraint on speech raises serious constitutional questions. However, the Court need not reach such constitutional issues if it agrees that HHS lacks statutory authority to promulgate the regulations at issue here as applied to former employees.

Fed. Reg. 25838 (May 14, 2003); *see also* 5 U.S.C. §§ 553(a)(2), 553(b)(A).[6] An agency may not rely on this exception to promulgate rules that substantially affect parties outside the government. *See Tunik v. Merit Sys. Protection Bd.*, 407 F.3d 1326, 1344 (Fed. Cir. 2005); *Joseph v. United States Civil Serv. Comm'n*, 554 F.2d 1140, 1153 & n.23 (D.C. Cir. 1977); *Seaboard World Airlines v. Gronouski*, 230 F. Supp. 44, 46 (D.D.C. 1964); *see also Alcaraz v. Block*, 746 F.2d 593, 612 (9th Cir. 1984) ("The exceptions to section 553 will be narrowly construed and only reluctantly countenanced.") (internal quotations omitted). Indeed, in amending its *Touhy* regulations in 2003, the agency specifically relied on 5 U.S.C. 553(b)(A) to avoid "Public Participation," and acknowledged that it could not "create or broaden a Federal litigation privilege" through the promulgation of such regulations. 68 Fed. Reg. at 25838. There is no doubt that Tenet and Mr. Scully (as a *former* employee) are substantially affected by this purported restriction on their ability to subpoena testimony from non-employees pursuant to the Federal Rules of Civil Procedure, or provide testimony in response to a subpoena. HHS claims nothing less than the power to determine not just when, but whether a federal court may subpoena the relevant testimony of third parties. This sweeping assertion of power over third parties, including former employees, finds no basis in Housekeeping Statute.[7] Thus, as applied to former employees, HHS's *Touhy* regulations are invalid.

---

[6] Amazingly, although the 2003 amendments broaden HHS's *Touhy* regulations to purportedly encompass former employees, the Federal Register notice itself fails to identify this change.

[7] This is not to suggest that 5 U.S.C. § 301 creates a substantive privilege an agency may assert with respect to the testimony of current employees. The Housekeeping Statute makes clear that it "does not authorize withholding information from the public or limiting the availability of records to the public." *Id.* What the statute does, however, allow is the agency to determine *who* will respond to subpoenas issued to agency employees, and thus ensure the orderly use of public resources.

**B.     The Potential Assertion Of Privilege By The Government Cannot Justify Application Of HHS's *Touhy* Regulations To Former Employees.**

The government would have the Court believe that application of HHS's *Touhy* regulations to former employees is simply a mechanism by which the agency can police application of evidentiary and constitutional privileges. Indeed, it goes so far as to argue that "[t]he real issue in this case is whether the Government can establish a procedure that allows it to respond to requests for potentially privileged or protected information." Mot. Quash 10. However, the Housekeeping Statute authorizes nothing of the sort, much less with respect to former employees, and the government points to no other source of authority for the regulations at issue here. Moreover, the disputed regulations sweep far more broadly than simply giving the government notice of a potential privilege issue and, on their face, make no reference to privileges—they apply regardless of whether privileged communications are implicated and purport to allow the agency to withhold testimony if its is not "in the interest of the DHHS or the federal government." 45 C.F.R. § 2.4(a). Thus, the government's argument, that "[t]he only way to prevent" the unintended disclosure of privileged or protected information "is to require people seeking potentially protected information … to give the Government advance notice of the information it is seeking, so the Government can decide whether and how to assert its proper privileges," rings rather hollow. Mot. Quash 12.

Indeed, if the purpose of these *Touhy* regulations is merely to enable the government to preserve privileges, then they are an utter failure. The regulations restrict the speech of former employees in one context only: litigation. *See* 45 C.F.R. § 2.3. A former HHS employee can write a tell-all book disclosing all sorts of privileged information, and these regulations have nothing to say about it. Bizarrely, that same former employee could not be deposed about a non-privileged statement in that book absent pre-clearance from HHS. Likewise, HHS has no

12

objection to former employees giving testimony to Congress without pre-clearance, just not this Court. *See* 45 C.F.R. § 2.1(d)(2). This discrimination against litigants and the federal courts with respect to former employees "implicates serious questions of separation of powers." *Virtual Defenses & Dev. Int'l., Inc. v. Republic of Moldova*, No. 98-161 (RMU) (AK), 2000 U.S. Dist. LEXIS 15623, *9 (D.D.C. Oct. 24, 2000); *see also Exxon Shipping*, 34 F.3d at 778; *Alexander v. F.B.I.*, 186 F.R.D. 66, 70 (D.D.C. 1998).[8]

In any event, the government is on full notice of Tenet's subpoena to Mr. Scully. Mr. Scully, of course, may decline to answer questions on the grounds of privilege. *See Cavanaugh v. Saul*, No. 03-0111, 2005 WL 3591023, *8 (D.D.C. Dec. 23, 2005). Privilege is a ground for objecting to and refusing to answer questions—not for quashing a subpoena. If the government believes its interests are significant enough to warrant formal intervention for purposes of asserting privileges, then it remains free to seek leave to do so if can demonstrate a sufficient interest. *See id.* at *7-*8.[9] And, of course, Mr. Scully (and the government, if permitted leave to

---

[8] The calculus is again different when it comes to current employees. Forcing the executive branch to expend resources in response to every subpoena a court might wish to issue, when the government is not a party, and interfering with the executive's management of its own employees, would raise different separation of powers concerns. *Cf. Touhy*, 340 U.S. at 467 (considering "whether the Attorney General can validly withdraw from his subordinates the power to release department papers").

[9] As in *Cavanaugh*, Tenet has made clear that it does not seek to question Mr. Scully regarding genuinely privileged information. The government's "skepticism" toward this representation is not well taken. Mot. Quash 11. Tenet, of course, immediately and voluntarily withdrew Mr. Scully's declaration at the government's request. As explained in Tenet's opening brief, Tenet seeks Mr. Scully's testimony to address causation issues for which plaintiffs have repeatedly cited his public statements. *See* Mot. Compel 2-3. In any event, Mr. Scully's withdrawn declaration did not purport to disclose privileged information or represent CMS's views on any issue. Rather, Mr. Scully expressed his own views about CMS based on his own experience. To the extent the government disagrees with Mr. Scully's views, it has shown no hesitance to date about expressing a contrary view in the underlying litigation and making clear that Mr. Scully's views do not represent those of CMS. *See* Mot. Quash 5 n.3 (noting that in one of its two *amicus*
(Continued...)

13

intervene) may seek the protections afforded by Rules 26(c) and 45(c)(3). *See Exxon*, 34 F.3d at 779; *Linder v. Calero-Portocarrero*, 251 F.3d 178, 180-81 (D.C. Cir. 2001). But what the government is not free to do is assert the right to pre-clear Tenet's subpoena of a non-employee and Mr. Scully, likewise, cannot refuse to respond based on the absence of such pre-clearance.

## CONCLUSION

For the foregoing reasons, Tenet's motion to compel Mr. Scully to comply with the subpoena of February 3, 2006 should be granted and the government's cross-motion to quash should be denied.

Respectfully submitted,

*[signature]*

Jay P. Lefkowitz (DC 449280)*
Karen N. Walker (DC 412137)
Susan E. Engel (DC 484448)
John C. O'Quinn (DC 485936)
KIRKLAND & ELLIS LLP
655 15th Street NW, Suite 1200
Washington, DC 20005
(202) 879-5000
*Counsel for Tenet Healthcare Corp.*

February 23, 2006

* *Counsel of Record*

---

briefs, the government stated "'the opinion of Mr. Scully ... does not reflect the views of CMS'").

14

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Consolidated Opposition to United States' Cross-motion to Quash and Reply in Support of Motion to Compel Deposition of Thomas A. Scully was served on this 17th day of March 2006 as follows:

<u>By Hand Delivery and Electronic Mail</u>

David H. Thompson
COOPER & KIRK
Suite 750
555 Eleventh St., NW
Washington, D.C. 20004
*Counsel for Thomas A. Scully*

Michael F. Hertz
Michael Granston
Daniel Spiro
David T. Cohen
DEPARTMENT OF JUSTICE
Commercial Litigation Branch
Civil Division
601 D Street, NW
Suite 9002
Washington, DC 20530
*Counsel for the United States*

<u>By U.S. Mail and Electronic Mail</u>

Hilarie Bass
David Coulson
GREENBERG TRAURIG, P.A.
1221 Brickwell Ave.
Miami, FL 33131
*Counsel for Plaintiff Boca Raton Community Hospital, Inc.*

Hal M. Hirsch
Richard A. Edlin
Ann C. Turetsky
GREENBERG TRAURIG, LLP
200 Park Ave.
New York, NY 10166
*Counsel for Plaintiff Boca Raton Community Hospital, Inc.*

Maya S. Saxena
Christopher S. Polaszek
MILBERG WEISS BERSHAD & SCHULMAN, LLP
Tower 1 – Suite 600
5200 Town Center Cir.
Boca Raton, FL 33486
*Counsel for Plaintiff Boca Raton Community Hospital, Inc.*

Melvyn I. Weiss
David A.P. Brower
MILBERG WEISS BERSHAD & SCHULMAN, LLP
One Pennsylvania Plaza
New York, NY 10119
*Counsel for Plaintiff Boca Raton Community Hospital, Inc.*

Charles J. Crist, Jr.
ATTORNEY GENERAL
Christopher M. Kise
Solicitor General
PL-01, The Capitol
Tallahassee, FL 32399-1050
(courtesy copy)

                                                  /s/ John C. O'Quinn
                                                  John C. O'Quinn